

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00449-CV

---

IN THE INTEREST OF E.P., A CHILD

---

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 29,702, Honorable Cornell Curtis, Presiding

---

May 29, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, G.P., (Father) appeals the trial court's order terminating his parental rights to his daughter, E.P.[1]  Through a single issue, he contends the evidence was insufficient to support the trial court's finding that termination was in the best interest of E.P.  We affirm.

### *Evidence of Record and Ruling*

On November 2, 2022, M.A. (Mother) gave birth to E.P.  Both she and E.P. tested positive for methamphetamine.  An investigator for the Department of Family and

---

[1] To protect the privacy of the parties involved, we refer to the child by initials and to the parents of the child as "Mother" and "Father."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).

Protective Services observed E.P. was unable to drink from a bottle and was jittery. A registered nurse at the hospital indicated that E.P. did not react when stuck with a needle and was feeding through a tube. Mother admitted to using methamphetamine during pregnancy and smoked marijuana prior to coming to the hospital. Of six prior children by Mother, five were removed by DFPS due to drug issues.[2] E.P. was removed and placed with E.P.'s maternal aunt.

On November 7, 2022, Father was served with citation at the TDCJ Wallace Unit. In August 2023, Father was adjudicated E.P.'s father based on genetic testing.

On December 5, 2023, the trial court held a final hearing. Father testified that, in May 2021, he had been convicted for possession of a controlled substance with intent to distribute. His sentence consisted of nine years imprisonment. His first opportunity for parole was denied in August 2023, while his next parole hearing was scheduled for September 2024. If not paroled, he could remain in prison until 2030.

Father also testified that during his incarceration, he had not communicated with M.A. or his caseworker. Neither had he reached out to E.P. either through letters, cards, or telephone calls. Although he received packets from the caseworker, he did not complete or return any of the paperwork because he allegedly did not understand how to do that. Nor did he contact his caseworker to discover how, though he purportedly invited his mother to do so on his behalf.

Appellant had been to prison four times prior to his current incarceration and conceded to having "a little bit of a problem staying out of prison." Furthermore, a June

---

[2] Mother subsequently executed an affidavit of voluntary relinquishment of her parental rights, and in November 2023, her parental rights were terminated by interlocutory decree. She did not appeal.

2005 conviction for possessing controlled substances with intent to deliver resulted in a seventeen-year sentence. Other of his convictions include three for burglarizing a building, two for possessing drugs, and one for being a felon in possession of a firearm. Appellant also agreed with counsel that his record indicated an excessive substance abuse problem and an inability to successfully complete other periods of probation, parole, and mandatory supervision.

E.P. was not appellant's only child. He also had a thirteen year old, at time of trial. Having this older child, however, was not sufficient impetus to forgo criminal activity and remain free from incarceration. His circumstances also rendered him unable to care for E.P. and her older sibling. Nevertheless, he indicated he had been taking classes in carpentry and culinary arts, attending alcoholics anonymous, performing cognitive skills, and staying busy "to give him a better chance at parole next year." And, once freed from prison, his intent was to be a part of E.P.'s life, though he conceded that her present situation with her caretakers was the best for her until then.

Kim Terry, Father's case manager, testified as follows: 1) that E.P. had been in her current placement for most of her young life; 2) that Father had been sent several letters with the family plan of service; and 3) that he had been notified about checking in with her. She also included self-addressed stamped envelopes and extra paper encouraging him to write back if he had any questions. Yet, appellant never responded. Nor did she receive any letters from him to deliver to his daughter.

According to Terry, E.P. had lived with her maternal aunt and uncle for all but four months of her life. So too had the child and her caretakers bonded. The child apparently referred to them as "mom" and "dad." Under the protection of her caretakers, E.P. has

3

met milestones for her age. Additionally, the long-term goal for the child included adoption, and she doesn't have any concerns with the placement. She also testified that termination of Father's parental rights was in child's best interest.

At the conclusion of the hearing, the trial court found by clear and convincing evidence that Father had constructively abandoned E.P. and knowingly engaged in criminal conduct that has resulted in his conviction, imprisonment, and inability to care for E.P. for not less than two years from the date of filing the petition. It also concluded that termination of Father's parental rights was in E.P.'s best interest.

### Analysis

Via a single issue on appeal, Father challenges the sufficiency of the evidence supporting the trial court's finding that termination of his parental rights to E.P. was in the child's best interest. We overrule the issue.

First, the pertinent standard of review is that explained in *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We apply it here.

Next, "[t]he best-interest prong of the termination inquiry is child-centered and focuses on the child's well-being, safety, and development." *In re J.W.*, 645 S.W.3d 726, 746 (Tex. 2022). In other words, it is the best interest of the child, and not the parent, that controls the analysis. *In re A.C.B.*, 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.).

When assessing the evidence regarding the trial court's best-interest determination, we consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367 (Tex.

4

1976).[3] Although those factors are not exhaustive, they indicate a number of considerations which either have been or would appear to be pertinent. *Holley*, 544 S.W.2d at 372. Additionally, evidence establishing the statutory grounds for termination may also be considered in the assessment of best interests. *In re T.C*, No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.) (noting that a parent who opts to forgo a challenge to predicate ground findings tacitly concedes that sufficient evidence supports those findings). In comparing the evidence described earlier with *Holley* and other relevant indicia, we conclude that the trial court's best interest finding had the support of both legally and factually sufficient evidence.

Rather than reiterate the evidence previously mentioned, we incorporate same and summarize our observations as follows. By his own admission, the thirty-five-year-old Father has "a little bit of a problem staying out of prison." Though hope for change may persist, neither the threat of prison, multiple imprisonments, nor the existence of minor children unable to care for themselves have dissuaded him from criminal activity. "Past is prologue" all too often, *In re K.J.B.*, No. 07-21-00235-CV, 2022 Tex. App. LEXIS 4134, at *5 (Tex. App.—Amarillo June 16, 2022, no pet.) (mem. op.) (so acknowledging in parent-child matters), and little suggests otherwise here. Neither E.P. nor the trial court were required to sit in limbo wishing for Father's early release from prison with a changed

---

[3] The *Holley* factors are as follows: 1) the desires of the child; 2) the emotional and physical needs of the child now and in the future; 3) the emotional and physical danger to the child now and in the future; 4) the parental abilities of the individuals seeking custody; 5) the programs available to assist these individuals to promote the best interest of the child; 6) the plans for the child by these individuals or by the agency seeking custody; 7) the stability of the home or proposed placement; 8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72.

lifestyle. They were not obligated to sit and hope he would experience a changed mindset bent on fostering familial relationships and forgoing drugs and crime. This is especially so given his nominal effort to develop a relationship with or otherwise provide for E.P. and E.P's flourishment in her current, loving, supportive environment. Again, it is the best interest of the child, not the parent, that controls. And, the evidence of record obligates us to find no error in the trial court's finding that those of E.P. warranted termination of the parental relationship between her and Father.

The order of termination is affirmed.


Brian Quinn
Chief Justice